The STATE of Ohio, Appellee,

v.

BURGESS, Appellant.

[Cite as State v. Burgess, 162 Ohio App.3d 291, 2005-Ohio-3747.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20642.

Decided July 22, 2005.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Kristen A. Brandt, Assistant Prosecuting Attorney, for appellee.

Mark A. Fisher, for appellant.

WOLFF, Judge.

{¶ 1} In May 2004, appellant, Paul Burgess, was found guilty by a jury in the Montgomery County Court of Common Pleas of four counts of rape of a person less than 13 years of age.

{¶ 2} He was sentenced to 15 years to life on each count. The court ordered the sentences for Counts One and Two to run concurrently, and for Counts Three and Four to run concurrently, but the court ordered the sentence for Counts One and Two to be served consecutively to the sentence for Counts Three and Four, for a total term of imprisonment of 30 years to life. Burgess was also designated a sexually oriented offender. Burgess appeals from his convictions, raising seven assignments of error. Because the facts of the case will be set out in more detail under the seventh assignment of error, we will address it first. The seventh assignment of error states:

> The trial court's decision to convict defendant-appellant of four counts of rape was against the manifest weight of the evidence and was not sufficiently supported by the evidence presented.

{¶ 3} Burgess claims that his conviction was supported by insufficient evidence and that it was against the manifest weight of the evidence.

{¶ 4} In considering the sufficiency of the evidence, the pivotal question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. At trial, the victim clearly recounted at least two instances of vaginal rape, one instance of digital penetration, and one instance of cunnilingus. Her testimony provided sufficient evidence to sustain the convictions.

{¶ 5} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288, 1997 WL 476684. A judgment should be reversed

as being against the manifest weight of the evidence only in exceptional circumstances. *Martin*, 20 Ohio App.3d at 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 6} The state presented the following evidence at trial.

{¶ 7} The 11–year–old victim, L.C., and her 15–year–old sister, Heather, were left at their brother's apartment on July 23, 2003, while their mother went to work, with the understanding that they were not allowed to have anyone come into the apartment and were to check in with their mother if they went out. The girls were apparently left at their brother's apartment because of problems in the past with Heather inviting boys to the girls' home while their mother was at work.

{¶ 8} According to L.C., Heather called two men known to her as J.R. and P.B. (Burgess) and invited them to come to her brother's apartment. After they arrived, Heather danced with J.R. for awhile and then went into the bedroom with him. L.C. and Burgess remained on the couch talking, during which time Burgess asked L.C. whether she was a virgin and whether she wanted to have sex with him. She declined. Burgess then pulled L.C. into the bathroom and told her to pull down her pants. When L.C. refused, Burgess pulled her pants down himself, turned her back to him, and pushed her against the sink. He then penetrated her with his finger and with his penis. L.C. told Burgess, "No," and told him that he was hurting her, to which he responded that she should relax and that it would feel better in the end. Burgess then told L.C. to get on the floor, and when she refused, he pushed her down on her back. He held her legs with his hands and again penetrated her with his penis. He then performed cunnilingus on L.C. and ejaculated on her stomach. L.C. testified that while she was on the floor, she was crying and telling Burgess to stop, but he again told her to relax and it would feel better. She also reported a lot of vaginal bleeding and burning following the rapes. However, when they left the bathroom, L.C. did not immediately tell Heather about the rape, because Burgess was still in the apartment and she was afraid to do so in his presence.

{¶ 9} Both girls and their brother testified that, a short time later, when the men were leaving the apartment, the brother arrived home and began to yell at Heather for having had boys in the apartment. L.C. then told her brother and sister that she had been raped. She was taken to Children's Hospital, where a rape kit was performed and she was tested for sexually transmitted diseases. She tested positive for gonorrhea, and treatment was started. She also received follow-up care several days later at the C.A.R.E. clinic at Children's Hospital, where the doctor observed that her hymen was "dusky, kind of bluish in color, which would suggest injury or bruising to that area." She was also referred to a pediatric surgeon for evaluation of continued vaginal bleeding. The gonorrhea had responded to treatment by the time of this exam.

{¶ 10} The victim testified that she had not known Burgess or J.R. prior to the date of the rape. Heather had known J.R., although she had not known his full name. However, Heather knew J.R.'s cell-phone number, and the police were able to track down J.R., and subsequently Burgess, through this information. Burgess later admitted having had sexual relations with L.C. at the apartment, but claimed that the acts had been consensual. Thereafter, Burgess tested positive for gonorrhea at the health department. DNA tests matched the semen found on L.C. to Burgess.

{¶ 11} According to Burgess, his understanding from J.R. was that if he went to the apartment, he was going to have sex with someone, although he did not know with whom. He stated that after Heather had gone into the bedroom with J.R., L.C. had gotten ice out of the freezer and had begun rubbing it on her body, then walked him into the bathroom. He admitted "finger[ing]" her at the sink and then attempting to penetrate her vaginally on the bathroom floor, but reported that she was "too small." He then ejaculated on her stomach. Burgess claimed that he had not used any force during this encounter.

{¶ 12} Based on this testimony, we cannot conclude that the jury clearly lost its way in convicting Burgess of four counts of rape. In weighing the evidence, the jury could have reasonably chosen to credit the testimony of the victim over that of Burgess. Moreover, the victim's testimony was corroborated by medical evidence, including her bruises and bleeding. We are unpersuaded that Burgess's conviction was against the manifest weight of the evidence or amounted to a manifest miscarriage of justice.

{¶ 13} The seventh assignment of error is overruled. Appellant's first assignment of error states:

The trial court erred in denying the appellant's motion to suppress evidence regarding the custodial statements taken from the appellant which were obtained in violation of his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments.

{¶ 14} Burgess contends that his statements to the police were not knowingly and voluntarily made, because he was not properly advised of his rights pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

{¶ 15} Burgess's brief suggests that there was some impropriety in the following circumstances surrounding his detention and interrogation: he did not initial each *Miranda* right on the interview form until after the entire form had been read aloud and he had agreed to talk with the detective; he was not told the name of the alleged rape victim until after he had signed the interview form; once the victim had been identified to Burgess, the detective did not ask if

Burgess wanted to assert any of his rights; and his conversation with the detective was not recorded.

{¶ 16} Burgess's argument seems to imply that there is a very formulaic manner in which officers must provide information to an interviewee prior to an interrogation and that the officer must continually ask a defendant if he wants to assert his rights as an interview unfolds. Neither the Ohio nor the United States Constitution imposes those requirements. Detective Richard Ward's unrefuted testimony at the suppression hearing established that Burgess had been fully informed of his rights and had indicated his understanding of those rights. It also established that Burgess had not been threatened or promised anything in exchange for his statements and that he had never attempted to end the interview or to invoke his right to an attorney. Based on this evidence, the trial court properly concluded that Burgess's statements to Detective Ward were knowingly, intelligently, and voluntarily made.

{¶ 17} The first assignment of error is overruled.

{¶ 18} The second and third assignments of error are related and will be addressed together:

The trial court erred in failing to hold a hearing three days prior to trial pursuant [to] Ohio Revised Code § 2907.02(E) concerning the prior sexual behavior of the alleged rape victim in order to determine the admissibility of the evidence which unduly prejudiced appellant.

The trial court erred in allowing the state to elicit testimony from the alleged victim regarding her past sexual history in violation of Ohio Rules of Evidence.

{¶ 19} Burgess claims that the trial court did not conduct a hearing on the admissibility of evidence related to L.C.'s sexual history, as required by R.C. 2907.02(E), before allowing that evidence to be offered at trial. He also claims that the evidence that was offered was not within the parameters of evidence permitted under the statute and that its probative value was outweighed by its prejudicial effect.

{¶ 20} R.C. 2907.02 provides:

{¶ 21} "(D) Evidence of specific instances of the victim's sexual activity * * * shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value. * * *

{¶ 22} "(E) Prior to taking testimony or receiving evidence of any sexual activity of the victim * * * in a proceeding under this section, the court shall

resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be held at or before preliminary hearing and not less than three days before trial * * *."

■ {¶ 23} We will first address Burgess's argument that no hearing was conducted as required by R.C. 2907.02(E). The state filed a motion for such a hearing on May 12, 2004, indicating its intention to elicit testimony from the victim that she had had no other sexual experiences prior to the sexual assault alleged in this case. Burgess filed a memorandum in opposition. During voir dire later that month, the court indicated at a sidebar that it had discussed this issue with the parties "two weeks ago" and had ruled the previous week that the state would be allowed "to bring up the victim's lack of sexual history and the fact that she and the defendant both have gonorrhea." Although the hearing occurred off the record, the record established that the hearing did occur and that it enabled the trial court to discern that the victim's sexual history was being offered for a proper purpose. Thus, we reject Burgess's argument that the trial court failed to conduct the hearing required by R.C. 2907.02(E).

■ {¶ 24} Burgess also claims that the trial court did not have a proper basis for admitting evidence of the victim's sexual history. The statute clearly provides, however, that evidence of sexual history is admissible if it involves evidence of the origin of disease. The victim's testimony that she had had no prior sexual encounters, coupled with the fact that both the victim and Burgess tested positive for gonorrhea after the alleged rape, tended to show the origin of the victim's disease. We do not share Burgess's view that the prejudicial nature of this testimony outweighed its probative value.

{¶ 25} The second and third assignments of error are overruled. Appellant's fourth assignment of error states:

> The trial court erred in convicting the appellant because Andrea Zimmer's, R.N., testimony was not properly before the court.

{¶ 26} Burgess claims that the testimony of nurse Andrea Zimmer about the victim's statements during her examination in the emergency room were inadmissible hearsay. Burgess recognizes that statements for purposes of medical diagnosis or treatment are excepted from the hearsay rule, Evid.R. 803(4), but he claims that these statements did not fall within that exception because the statements were actually made for evidence-collection purposes, i.e., for the rape kit, rather than for the purposes of medical treatment. The state responds that "the fact that Nurse Zimmer was required to ask L.C. for a history as part of the rape kit does not demonstrate that the statement was taken solely for evidence collection. L.C.'s history was also relevant for medical diagnosis and treatment."

The state claims that the statements also guided the doctor in his examination of the victim.

{¶ 27} We have observed that "the hearsay exception focuses on the perception of the declarant in making her statements." *State v. Jennings*, Clark App. No. 2002–CA–78, 2003–Ohio–4429, 2003 WL 21995261, at ¶ 18. In *Jennings*, which involved the sexual abuse of a child who was medically examined several months after the allegations were made, we stated: "Although there is no evidence in the record regarding the victim's perception of the exam, we believe that it is reasonable to conclude that a ten-year-old girl being examined by a doctor in a pediatrician's office assumes that she is there for the purposes of medical treatment."

{¶ 28} In this case, even more than in *Jennings*, the facts strongly support the conclusion that L.C. would have perceived that her examination was for medical purposes, rather than investigatory purposes. L.C. was transported to the hospital in an ambulance on the day of the attack because she was bleeding from her vagina and was complaining of a burning sensation. Moreover, there is no question that L.C. did, indeed, receive medical treatment at the hospital, along with follow-up care, based on her account of what had happened to her that day. Thus, we are confident that L.C.'s statements were made for the purpose of medical diagnosis and treatment, and therefore nurse Zimmer was not precluded from testifying about them.

{¶ 29} The fourth assignment of error is overruled. Appellant's fifth assignment of error states:

The trial court erred in its sentencing of appellant to consecutive prison terms.

{¶ 30} Burgess claims that the trial court did not comply with R.C. 2929.14(E)(4) and 2929.19(B)(2)(c) in that it failed to set forth its reasons for imposing consecutive sentences. The state agrees with this assessment. Therefore, we vacate the sentences and remand the cause for resentencing, whereupon the trial court can impose a different sentence or comply with the requirements for the imposition of consecutive sentences.

{¶ 31} The fifth assignment of error is sustained. Appellant's sixth assignment of error states:

The trial court erred by not merging counts 1, 2, 3 and 4 at the time of sentencing[;] pursuant to Ohio law the counts merge and are only subject to one conviction.

{¶ 32} Burgess contends that the trial court should have merged at least two counts of rape, and perhaps all four counts, because all of the "allegations took place in one single course of conduct when L.C. and Appellant [were] in the

bathroom together." The state claims that Burgess had a separate animus as to each offense and therefore he was not entitled to merger for purposes of sentencing.

{¶ 33} In *State v. Nicholas* (1993), 66 Ohio St.3d 431, 434, 613 N.E.2d 225, the Supreme Court of Ohio reiterated the two-step analysis employed to determine whether multiple crimes constitute allied offenses of similar import:

{¶ 34} "In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses."

{¶ 35} Thus, the nature of this assignment requires us to consider the various types of rape committed. "Sexual conduct," as used in the definition of rape, is defined in R.C. 2907.01(A) as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." It is clear from the discussions on the record concerning the merger of offenses that the trial court viewed the bases for Burgess's four rape offenses as follows: one count of digital penetration and one count of vaginal penetration while the victim was pushed against the sink in the bathroom, and one count of vaginal rape and one count of cunnilingus while the victim was on the bathroom floor.

 {¶ 36} Vaginal rape and cunnilingus have distinct elements that do not correspond to such a degree that commission of one crime will result in commission of the other crime. See *State v. Hicks* (May 19, 2000), Montgomery App. No. 17730, 2000 WL 646505. Stated differently, commission of oral rape does not constitute commission of vaginal rape, and the converse is likewise true. Thus, vaginal rape and oral rape are not allied offenses of similar import, and the trial court did not commit error in failing to merge the vaginal rapes committed by Burgess with the oral rape he committed. See, also, *Nicholas,* 66 Ohio St.3d at 434, 613 N.E.2d 225. The same can be said for digital penetration and vaginal rape—the commission of one does not result in the commission of the other. Therefore, they are not allied offenses of similar import.

{¶ 37} With respect to the vaginal rapes that Hicks committed, it is clear that these constitute allied offenses of similar import, so we must proceed to determine whether these offenses were committed separately. Id.; *State v. Jones* (1997), 78 Ohio St.3d 12, 676 N.E.2d 80. The evidence established that the first vaginal rape occurred while Burgess had the victim pushed up against the sink in the bathroom. He then ordered her to the floor and, when she refused to comply, pushed her down, whereupon he held her legs and vaginally raped her at least one more time. Although these rapes occurred within a short period of time, they nevertheless were separated by the intervening act of repositioning the victim, which, in turn, required a separate specific intent for each vaginal rape. Moreover, we are of the view that it is more physically damaging to be *repeatedly* raped, even if it involves the same type of sex, than to be raped a single time. See *State v. Hayes* (Mar. 1, 1994), Franklin App. No. 93AP–868, 1994 WL 64275. Thus, we conclude that the facts present in this case were sufficient to support the trial court's conclusion that the second act of vaginal rape was committed separately from the first act of vaginal rape. The trial court did not err in failing to merge these two rapes.

{¶ 38} The sixth assignment of error is overruled.

{¶ 39} The judgment of the trial court is reversed, and the cause is remanded with respect to the imposition of consecutive sentences. In all other respects, the judgment is affirmed.

Judgment reversed in part
and affirmed in part,
and cause remanded.

FAIN, J., concurs.

GRADY, J., concurs separately.

GRADY, Judge, concurring.

{¶ 40} I agree that the second and third assignments of error should be overruled, but for reasons different from those on which the majority relies.

{¶ 41} R.C. 2907.02(E) requires the court to conduct a hearing in chambers to resolve the admissibility of "any sexual activity of the victim or the defendant" in a prosecution for an alleged violation of R.C. 2902.07 (rape). R.C. 2907.02(E) refers to division (D) of that section, which prohibits admission of any "[e]vidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity," except for the limited purposes the section identifies. Similar provisions are therein made concerning the defendant's sexual activity.

{¶ 42} "Sexual activity" is defined by R.C. 2907.01(C) to include both sexual conduct and sexual contact, as those are defined by R.C. 2907.01(B) and (C) respectively. All the matters set out in those definitions involve positive acts. The prohibitions on admission of evidence imposed by R.C. 2907.02(D) cannot reasonably be interpreted to extend to evidence showing the victim's or the defendant's failure to engage in sexual activity. Therefore, the limitations that that section imposes do not apply to such evidence, and the court is not required to conduct a R.C. 2907.02(E) hearing before such evidence is admitted.

{¶ 43} The prohibitions imposed by R.C. 2907.07(C) and (D) are intended to avoid harassment of the victim or the defendant through questions or evidence suggesting a propensity to engage in sexual activity. The resulting embarrassment and the potential confusion of the issues are properly prevented. Even so, it is difficult to find that such results might occur from evidence showing the lack of sexual activity on the part of either the victim or the defendant.

{¶ 44} I agree that the record does not support the defendant's contentions that the court failed to hold the required hearing or that the evidence of the victim's lack of sexual activity that the court admitted was inadmissible. However, neither do I believe that our opinion ought to suggest that R.C. 2907.07(D) and (E) apply to evidence of this kind. Therefore, I have stated that view separately.