[Cite as *State v. McCain*, 2021-Ohio-1605.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-16 |
| | : | |
| v. | : | Trial Court Case Nos. 2017-CR-260, |
| | : | 2018-CR-232, 2020-CR-26, |
| JERRY LEE MCCAIN | : | 2020-CR-45 |
| | : | |
| Defendant-Appellant | : | (Criminal Appeal from |
| | : | Common Pleas Court) |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 7th day of May, 2021.

. . . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0061426, Assistant Prosecuting Attorney, Champaign County Prosecutor's Office, 200 North Main Street, Urbana, Ohio 43078
      Attorney for Plaintiff-Appellee

BRYAN HICKS, Atty. Reg. No. 0065022, P.O. Box 359, Lebanon, Ohio 45432
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Appellant, Jerry Lee McCain, appeals from his convictions in two cases in the Champaign County Court of Common Pleas and the revocation of his community control sanctions in two other cases based on those additional convictions. McCain asserts that his guilty pleas were not knowing and intelligent. Since the record does not support this contention, the trial court's judgments will be affirmed.

**Facts and Procedural History**

{¶ 2} While serving two community control sanction (CCS) sentences in Champaign C.P. Nos. 2017-CR-260 and 2018-CR-232, McCain was indicted in two additional cases. In Case No. 2017-CR-260, McCain had been convicted of petty theft, a first-degree misdemeanor, and two counts of breaking and entering, fifth-degree felonies; in Case No. 2018-CR-232, McCain had been convicted of aggravated possession of drugs, a fifth-degree felony. The additional indictments were assigned Champaign C.P. Nos. 2020-CR-26 and 2020-CR-45. In Case No. 2020-CR-26, McCain was indicted on three counts of aggravated possession of drugs, all fifth-degree felonies, and one count of illegal use or possession of drug paraphernalia, a fourth-degree misdemeanor. In Case No. 2020-CR-45, McCain was indicted on two counts of forgery, both fifth-degree felonies, and one count of aggravated possession of drugs, a fifth-degree felony. As a result of the new indictments, the State initiated CCS revocation proceedings in Case Nos. 2017-CR-260 and 2018-CR-232.

{¶ 3} In Case No. 2020-CR-26, the Champaign County Grand Jury was ready to consider a charge of aggravated possession of drugs, a third-degree felony. This charge, it seems, would have been based upon the aggregate weight of the drugs (methamphetamine) involved in the already-indicted aggravated possession counts. But

before the charge was presented to the grand jury, the parties reached a plea agreement as follows: (1) in Case No. 2020-CR-26, McCain pleaded guilty through a Bill of Information to aggravated possession of drugs, a third-degree felony, and the remaining counts were dismissed; (2) in Case No. 2020-CR-45, McCain pleaded guilty to forgery, a fifth-degree felony, and the remaining counts were dismissed, and (3) McCain admitted to CCS violations in Case Nos. 2017-CR-260 and 2018-CR-232. As part of the plea agreement, the State requested imposition of a 36-month prison term in Case No. 2020-CR-26, to be served concurrently to any prison terms imposed in Case Nos. 2020-CR-45, 2017-CR-260, and 2018-CR-232. The trial court ultimately imposed an aggregate prison term of 62 months. This appeal followed.

## Analysis

{¶ 4} McCain's sole assignment of error is as follows:

[MCCAIN'S] PLEA WAS NOT KNOWING AND INTELLIGENT.

{¶ 5} McCain suggests that his guilty pleas were not knowing and intelligent because the Crim.R. 11 plea colloquy demonstrated he did not understand the constitutional rights he was waiving. On this record, we cannot agree with this conclusion.

{¶ 6} Due process requires that a guilty plea be knowing, intelligent, and voluntary. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25; *State v. Hill*, 2d Dist. Clark No. 2019-CA-11, 2020-Ohio-7, ¶ 7. A trial court's "[c]ompliance with Crim.R. 11(C) ensures that a plea meets this constitutional mandate." *Hill* at ¶ 7, citing *State v. Cole*, 2d Dist. Montgomery No. 26122, 2015-Ohio-3793, ¶ 12. "Strict compliance with the

Crim.R. 11(C)(2)(a) constitutional advisements is necessary to establish that a plea is consistent with due process." *Id.*, citing *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, citing *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 261, ¶ 18.

{¶ 7} A defendant's competence to knowingly and intelligently enter a guilty plea is gauged by the same standard used to determine whether a defendant is competent to stand trial. *State v. Simpson*, 2016-Ohio-1267, 61 N.E.3d 899, ¶ 11 (2d Dist.), citing *Godinez v. Moran*, 509 U.S. 389, 397-398, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). A defendant is presumed competent to stand trial, but, of course, this presumption is subject to rebuttal. *State v. Schooler*, 2018-Ohio-3295, 118 N.E.3d 467, ¶ 26 (2d Dist.). Based upon this presumption, it is the defendant's burden to establish that he is not competent to stand trial or plead guilty. *Id.* at ¶ 29, citing *State v. Ferguson*, 2018-Ohio-987, 108 N.E.3d 1161, ¶ 20 (2d Dist.), citing *State v. Jordan*, 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, ¶ 28. R.C. 2945.37(G) states the following regarding the findings required to establish a defendant's incompetency:

> * * * If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial * * *.

Thus, "[t]he test for determining whether a defendant is competent * * * is whether he * * * has sufficient present ability to consult with * * * his lawyer with a reasonable degree of rational understanding of the proceedings [pending] against him * * *." (Citations

omitted.) *Schooler* at ¶ 29.  In the context of a plea, the test, as appropriately modified, is whether the defendant has the ability to consult with his lawyer, whether he has a reasonable and rational factual understanding of the charges to which he is pleading guilty, and whether he has a reasonable and rational understanding of the rights he is waiving by pleading guilty.  *State v. Zachery*, 5th Dist. Stark No. 2004-CA-91, 2004-Ohio-6821, ¶ 20.

{¶ 8} Factors often considered when determining a defendant's competence include doubts articulated by counsel, a defendant's "irrational behavior," a "defendant's demeanor," and any "prior medical opinion relating to competence * * *."  *Schooler* at ¶ 27, quoting *State v. Rubenstein*, 40 Ohio App.3d 57, 60-61, 531 N.E.2d 732 (8th Dist.1987).  *See also Ferguson* at ¶ 18.

{¶ 9} A defendant's low IQ or even a mild mental disability does not "necessarily" compel the conclusion the defendant is "incapable of entering a valid plea."  *Simpson* at ¶ 10.  *See also Zachery* at ¶ 22, citing *Atkins v. Virginia*, 536 U.S. 304, 306, 122 S.Ct. 2242, 153 L.Ed.2d 335; *State v. Dooley*, 3d Dist. Allen No. 1-10-41, 2010-Ohio-6260, ¶ 21.

{¶ 10} Turning to the pending case, we begin the discussion by noting the following.  First, McCain does not – nor could he – assert that the trial court did not comply with the Crim.R. 11 plea requirements.   Second, trial counsel did not suggest that he doubted McCain's competence, the record does not suggest that McCain engaged in irrational behavior during the plea hearing, and there is no medical opinion casting doubt upon McCain's competence.  Third, the trial court was quite familiar with McCain, including from the proceedings in Case Nos. 2017-CR-260 and 2018-CR-232, in which

McCain entered guilty pleas. Finally, McCain does not argue that he could not reasonably consult with counsel or that he did not have a reasonable understanding of the proceedings pending against him. Rather, McCain's assertion is very narrow; it is simply that the Crim.R. 11 colloquy did not support the conclusion that he understood the constitutional rights he was waiving by pleading guilty.

{¶ 11} The constitutional rights at issue were those set forth in Crim.R. 11(C)(2)(c): the right to a jury trial during which the State had the obligation to establish guilt beyond a reasonable doubt; the right of confrontation, the right against self-incrimination, and the right to compulsory process. *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 14.

{¶ 12} The parties agree, and the record reflects, that McCain, who was age 61 on the date of the plea hearing, had developmental and intellectual disabilities. According to the presentence investigation report, these disabilities were apparently congenital and "manifest[ed] * * * in problems with impulse control, reasoning, memory, judgment, and following social norms." The record also reflects that McCain had a significant criminal history dating back to 1977 and that he has been sentenced to prison on at least four previous occasions. Significantly, the record does not reflect that McCain had ever previously been found incompetent to stand trial or to enter a guilty plea.

{¶ 13} The trial court, being well aware of McCain's intellectual limitations, was very thorough when explaining and ensuring that McCain understood the constitutional rights he was waiving. This is not to suggest that the plea hearing was easy or seamless. But the following exchanges, which occurred toward the end of the plea hearing, convince us that McCain did understand the constitutional rights he was waiving by pleading guilty:

THE COURT: We've gone over your Constitutional rights. There are five of them. We've talked about them 15 times.[1] After looking – after hearing your answers, as well as looking at your facial expressions, I believe that you understand what I'm saying to you.

I believe that you're having trouble explaining it back to me. And the record should reflect that Defendant has a speech impediment that is not tied to intellectual disability. But, rather, the inability to form words in his mouth. So for transcript purposes, it will be difficulty for the court reporter who has not worked with Mr. McCain over the years to perhaps understand some of the things he's saying.

But I believe you understand, Mr. McCain, what I have explained to you. And I believe you have done a fairly good job with the evidence. But I want to go through it one more time so that I'm convinced that you understand the rights you're giving up, okay?

THE WITNESS: Yes.

THE COURT: You give up the right to a jury trial. Tell me what a jury trial is?

THE WITNESS: You take 12 people to find me guilty beyond a reasonable doubt. It takes one to find me not guilty.

THE COURT: That's perfect. For people who accuse you of crime, what are you able to do with those people? People who want to come in here

---

[1] This is an exaggeration, but, as noted, the record reflects the trial court's careful and patient explanation of each constitutional right.

and say Jerry McCain committed a crime. What are you able to do with them?

THE WITNESS: Have to subpoena them into court beyond a reasonable doubt.

THE COURT: Yes, you can subpoena them into court. But are you able to ask those people questions?

THE WITNESS: Yes, if I subpoena them into court.

THE COURT: Well, if the Prosecutor subpoenas them into court, if they are the State's witnesses, are you able to ask the Prosecutor's witnesses questions?

THE WITNESS: Yes.

THE COURT: That's right. And you give up that right by pleading guilty. Do you understand that?

THE WITNESS: Yes.

THE COURT: So if you plead guilty, do the police have to come in here and testify? If you plead guilty now?

THE WITNESS: No.

THE COURT: Does the bank need to come in here and testify if you plead guilty?

THE WITNESS: Nope.

THE COURT: Okay. What happens if you have witnesses that help Jerry McCain? How do you get those witnesses here?

THE WITNESS: Got to subpoena them into court.

THE COURT: And do you have the right to have witnesses come and testify for you?

THE WITNESS: Yes.

THE COURT: All right. Do you remember what that level of proof is that the Prosecutor has to show the jury to find you guilty? What that level of proof is called?

THE WITNESS: The high level.

THE COURT: Yes. The high level. Do you remember what that is called specifically? Proof beyond a reasonable doubt.

THE WITNESS: Proof beyond a reasonable doubt.

THE COURT: Do you remember that?

THE WITNESS: Yes.

THE COURT: And for probation cases it is lower. It is a preponderance of the evidence. Do you understand this?

THE WITNESS: Yes.

THE COURT: What happens if the Prosecutor does not meet that level of proof in either case? What happens then?

THE WITNESS: I'm found not guilty.

THE COURT: * * * And, last, if the Prosecutor is presenting his testimony and he wants to force Jerry McCain to testify, can he force you to testify?

THE WITNESS: No.

THE COURT: Why's that?

THE WITNESS: He has to prove me guilty.

THE COURT: Well, he can't force you to take the stand if you don't want to. Do you understand that?

THE WITNESS: Yes.

THE COURT: So can the Prosecutor force you to take the stand?

THE WITNESS: No.

THE COURT: Do you understand that by pleading guilty you give up that right?

THE WITNESS: Yes.

* * *

Sentencing Transcript p. 64-68.

{¶ 14} Given this record, and recognizing the trial court's history with McCain and its ability to personally assess McCain's level of understanding, the trial court did not err in its conclusion that McCain understood the constitutional rights he waived by pleading guilty. Thus, we cannot conclude that McCain's guilty pleas were less than knowing and intelligent. McCain's sole assignment of error is overruled.

## Conclusion

{¶ 15} The judgments of the Champaign County Common Pleas Court are affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Jane A. Napier
Bryan Hicks
Hon. Nick A. Selvaggio