[Cite as *State v. Muldrew*, 2018-Ohio-4883.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27901 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-3749 |
| | : | |
| EDWARD MULDREW | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of December, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

MARK J. BAMBERGER, Atty. Reg. No. 0082053, P.O. Box 189, Spring Valley, Ohio 45370
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Edward Muldrew appeals from his conviction and sentence, following pleas of guilty, for kidnapping, rape, felonious assault, and grand theft of an automobile. He contends that the trial court erred in failing to merge his convictions for the purposes of sentencing and that the trial court erred by imposing consecutive sentences. He further contends that the trial court erred in failing to consider his mental health as it related to competency to stand trial and as a mitigating factor in sentencing.

{¶ 2} We conclude that the trial court did not err by not merging the convictions, and the imposition of consecutive sentences was not clearly and convincingly unsupported by the record. We further find no support for the claim that the court failed to consider Muldrew's mental health. Accordingly, the judgment of the trial court is affirmed.

## I. Facts and Procedural History

{¶ 3} In February 2017, Muldrew was indicted on two counts of rape in violation of R.C. 2907.02(A)(2), one count of kidnapping (purpose to engage in sexual activity) in violation of R.C. 2905.01(A)(4), one count of felonious assault in violation of R.C. 2903.11(A)(1), and one count of grand theft auto in violation of R.C. 2913.02(A)(4). The kidnapping charge carried a sexual motivation specification as set forth in R.C. 2941.147.

{¶ 4} After the appointment of counsel, Muldrew filed a motion for a competency evaluation. Muldrew was subsequently evaluated by Dr. Massimo Marchis, a psychologist with the Forensic Psychiatry Center for Western Ohio. According to Marchis's report, Muldrew refused to participate in psychological testing. However,

Marchis opined that, based upon his interview and review of the case, Muldrew was competent to stand trial. Thereafter, Muldrew filed a notice of a plea of not guilty by reason of insanity. He also filed a request for a second psychological evaluation. The second psychologist, Daniel Davis, issued a report indicating that Muldrew submitted to psychological testing. Davis's report also opined that Muldrew was competent to stand trial, that he did not suffer from a mental defect at the time he committed the offenses, and that Muldrew was aware of the wrongfulness of his acts at the time of the offenses. The trial court found Muldrew competent to stand trial.

{¶ 5} Thereafter, Muldrew filed a motion to suppress, which was set for a hearing. On the day of the hearing, Muldrew indicated that he wanted to enter a plea of guilty on all counts. Counsel for Muldrew indicated that he and the prosecutor disagreed on the question of whether any of the offenses would merge for the purposes of sentencing. Thereafter, Muldrew entered his guilty plea with the understanding that the issue of merger would be briefed prior to sentencing. The trial court ordered the State to file a Bill of Particulars.

{¶ 6} In December 2017, the State filed a Bill of Particulars which stated, in pertinent part, as follows:

> With respect to Count 1, the nature of the offense is that on February 4, 2017, in Montgomery County, Ohio, the Defendant engaged in sexual conduct with the victim, identified as M.S., by purposely compelling her to submit by force or threat of force. Specifically, Defendant put the knife to M.S.'s throat, punched her multiple times in the head and face. He then pulled her pants down, and pushed her over the seat and used his penis to

penetrate her vaginally. This is one count of Rape (force or threat).

With respect to Count 2, the nature of the offense is that on February 4, 2017, in Montgomery County, Ohio, the defendant engaged in sexual conduct with the victim, identified as M.S., by purposely compelling her to submit by force or threat of force. Specifically, after penetrating M.S. vaginally, Defendant then penetrated her anally. This is one count of Rape (force or threat).

With respect to Count 3, the nature of the offenses is that on February 4, 2017, in Montgomery County, Ohio, the Defendant did by force, threat or deception, remove M.S. from the place she was found or restrained her liberty for the purpose of engaging in sexual activity against her will. Specifically, as described above, Defendant put a knife to M.S.'s throat to get her to comply with forcible rape, both vaginally and anally. When he was finished, he told her [he] had a gun, and directed her to take him to an ATM to withdraw money. M.S. was again forced to drive and Defendant told her he would shoot her if she tried to run. M.S. drove an unspecified distance, but upon reaching a red light, jumped out of the car and ran. This is one count of Kidnapping (sexual activity).

With respect to the Sexual Motivation Specification attached to Count 3, the nature of the offense is that the Defendant committed the kidnapping for the purpose of gratifying his sexual needs or desires.

With respect to Count 4, the nature of the offense is that on February 4, 2017, in Montgomery County, Ohio, Defendant knowingly caused serious

physical harm to M.S. Specifically, when Defendant punched M.S. in the face, he fractured her nose. This is one count of Felonious Assault (SPH).

With respect to Count 5, the nature of the offense is that on February 4, 2017, in Montgomery County, Ohio, Defendant did knowingly and by threat, obtain or exert control over a 2002 Honda Civic, with purpose to deprive the owner, M.S. Specifically, when M.S. jumped out of the car at the red light, Defendant took control of the vehicle and drove away. The vehicle was found 4 days later, having been abandoned. This is one count of Grand Theft (MV).

{¶ 7} On January 11, 2018, Muldrew filed a sentencing memorandum seeking to merge the two counts of rape, and also seeking to merge both the kidnapping and the felonious assault counts with the rape counts. The State filed a response. A sentencing hearing was conducted on February 9, 2018 at which time the trial court stated that it would "determine whether there is merger based strictly upon the Bill of Particulars, what was disclosed in the Bill of Particulars." Tr. p. 31. After a discussion of the merger issue, the trial court denied Muldrew's merger request.

{¶ 8} The trial court sentenced Muldrew to a mandatory term of eleven years in prison on each of the rape offenses, nine years on the kidnapping offense, eight years on the felonious assault, and 18 months for the grand theft auto offense. The rape convictions were ordered to run concurrently with each other. The kidnapping, felonious assault and grand theft auto convictions were ordered to run concurrently with each other and consecutively to the sentences for rape for an aggregate prison term of twenty years of which eleven years was a mandatory sentence. Muldrew appeals.

## II. Merger and Consecutive Service Analysis

**{¶ 9}** Muldrew's first assignment of error is as follows:

THE TRIAL COURT FAILED TO PROPERLY CONSIDER FULL MERGER OF THE OFFENSES AND THUS ISSUE FULLY CONCURRENT SENTENCING.

**{¶ 10}** Although not entirely clear, it appears that in this assignment of error Muldrew contends the trial court erred by failing to merge all of the offenses into one count of rape as they were all part of the same criminal act. He further argues that the trial court erred by ordering the sentence for the rape convictions to run consecutively to the sentence imposed for the remaining convictions.

**{¶ 11}** We begin with the issue of merger. "R.C. 2941.25 codifies the double jeopardy protections in the federal and Ohio constitutions, which prohibit courts from imposing cumulative or multiple punishments for the same criminal conduct unless the legislature has expressed an intent to impose them." *State v. Barker*, 183 Ohio App.3d 414, 2009-Ohio-3511, 917 N.E.2d 324, ¶ 22 (2d Dist.). R.C. 2941.25 provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as

to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 12} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Supreme Court of Ohio clarified the applicable standard when determining whether offenses merge as allied offenses of similar import:

Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Ruff* at ¶ 30-31.

{¶ 13} A criminal defendant bears the burden of establishing entitlement to merger, and we review a trial court's ruling on the issue de novo. *State v. LeGrant*, 2d Dist. Miami No. 2013-CA-44, 2014-Ohio-5803, ¶ 15.

**{¶ 14}** Although it is not clear whether Muldrew intended to raise the argument, we will address the issue of whether the trial court should have merged the two counts of rape. This court has previously held that anal rape and vaginal rape do not involve the same conduct and are not subject to merger. *State v. Coleman*, 2d Dist. Montgomery No. 26376, 2015-Ohio-538, ¶ 25, citing *State v. Nesser*, 2d Dist. Clark No. 2013 CA 21, 2014-Ohio-1978, ¶ 63. Thus, we conclude that the trial court did not err by declining the request to merge those two offenses.

**{¶ 15}** Muldrew next claims that the trial court should have merged the conviction for felonious assault with the conviction for rape because they were part of the same crime with the same animus. Significantly, this argument ignores the fact that Muldrew punched M.S. in the face. This conduct was not necessary, and further, the conduct caused a separate harm (the broken nose) that was distinct from the harm caused by the rapes. *State v. Mpanurwa*, 2017-Ohio-8911, 192 N.E.3d 66, ¶ 19 (2d Dist.). Thus, we conclude that the trial court did not err by failing to merge the conviction for felonious assault with the rape convictions.

**{¶ 16}** Muldrew also argues that the conviction for grand theft auto should have merged with the rape convictions. The bill of particulars indicates that the charge of grand theft auto was predicated upon the fact that Muldrew took control of the victim's vehicle after she escaped therefrom. He then drove the vehicle to his residence. At the point Muldrew took the vehicle, all of the other offenses had been completed. It can be inferred that Muldrew took the vehicle in order to avoid apprehension at the site of the offense. Thus, we conclude that taking the vehicle was a crime committed with a separate animus, and the trial court did not err by failing to merge this conviction.

{¶ 17} Finally, we address the issue of whether the kidnapping conviction should have merged with the rape convictions. Muldrew was indicted on, and convicted of, rape in violation of R.C. 2907.02(A)(2), which states that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Sexual conduct" is defined, in part, as vaginal intercourse or anal intercourse. R.C. 2907.01(A). Muldrew was also indicted on, and convicted of, kidnapping in violation of R.C. 2905.01(A)(4), which provides in pertinent part that "[n]o person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, [with the purpose to] engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will[.]" "Sexual activity" is defined, in part, as sexual conduct. R.C. 2907.01(C).

{¶ 18} The Supreme Court of Ohio has held that kidnapping as defined by 2905.01(A)(4) and rape as defined by R.C. 2907.02(A)(1) are allied offenses of similar import within the meaning of R.C. 2941.25(A). *State v. Donald*, 57 Ohio St.2d 73, 386 N.E.2d 1341 (1979), syllabus. However, the Court in *Donald* did not reach or discuss the issue of animus within the meaning of R.C. 2941.25(B). Shortly thereafter, as discussed by this court in *State v. Portman*, 2d Dist. Clark No. 2013-CA-68, 2014-Ohio-4343, the Supreme Court addressed the animus prong:

> All rapes inherently involve a restraint on the liberty of another, and where the act of rape is the sole unlawful exercise of restraint on the physical liberty of another person, the law is clear that any accompanying kidnapping charge should merge with the rape charge. *State v. Logan*, 60 Ohio St.2d

126, 397 N.E.2d 1345 (1979). A separate animus for kidnapping exists where (1) "the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense," or (2) "the asportation or restraint of the complainant subjects the complainant to a substantial increase in risk of harm separate and apart from that involved in the underlying crime." *Logan* at syllabus; *see also State v. Rucker*, 2d Dist. Montgomery No. 24340, 2012-Ohio-4860, ¶ 52. Although focused on the animus aspect of the allied offense analysis, these factors are also reasonable considerations for determining whether the defendant committed kidnapping as separate conduct from other offenses. *See State v. Lovato*, 2d Dist. Montgomery No. 25683, 2014-Ohio-2311, ¶ 13, citing *State v. Ware*, 63 Ohio St.2d 84, 406 N.E.2d 1112 (1980).

*Id.* at ¶ 32.

{¶ 19} As set forth in the Bill of Particulars, the kidnapping, for the purpose of engaging in sexual activity, occurred when Muldrew held a knife to M.S.'s throat and proceeded to rape her.[1] Muldrew could have committed the crimes of rape and kidnapping merely by holding the victim down. But because of the use of the knife, the restraint posed a substantial increase in the risk of harm separate from the rape. Thus,

---

[1] We note that the Bill of Particulars also sets forth a claim that the kidnapping continued after the rapes had been completed. However, the Bill of Particulars indicates that the animus for the continued kidnapping was for the purpose of obtaining M.S.'s money rather than for the purpose of sexual activity as charged in the indictment. Thus, our analysis focuses on the restraint connected with the purpose of sexual activity.

the crimes were committed with a different animus, and we must conclude that the trial court did not err in failing to merge the offenses.[2] *See State v. Greathouse*, 2d Dist. Montgomery No. 21536, 2007-Ohio-2136, ¶ 46 (detention posed an increased risk of harm because the defendant threatened to "crash and burn the car" with the victim inside and threatened to shoot her with a gun); *Portman* at ¶ 42 (use of a gun in the commission of a kidnapping increased the risk of harm separate from the ensuing rape).

{¶ 20} Based upon the foregoing, we conclude that the trial court did not err in denying Muldrew's request to merge the convictions for the purposes of sentencing.

{¶ 21} We next address the claim that the trial court erred in imposing consecutive sentences. R.C. 2929.14(C)(4) is an exception to the presumption in favor of concurrent sentences set forth in R.C. 2929.41(A). In this regard, R.C. 2929.14(C) provides that:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed

---

[2] We are cognizant of the fact that the defendant in *Logan* utilized a gun to aid in kidnapping the victim. However, the Court did not discuss the use of the gun as increasing the risk of harm to the victim. Rather, the Court focused solely on the distance of the asportation of the victim in determining whether to merge the kidnapping and rape convictions. *Id.* at 135.

pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶ 22}** When a defendant challenges a consecutive sentence, "R.C. 2953.08(G)(2)(a) directs the appellate court 'to review the record, including the findings underlying the sentence' and to modify or vacate the sentence 'if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14 * * * of the Revised Code.'" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 28, quoting R.C. 2953.08(G)(2)(a).

**{¶ 23}** "There are two ways that a defendant can challenge consecutive sentences on appeal. First, the defendant can argue that consecutive sentences are contrary to law because the court failed to make the necessary findings required by R.C. 2929.14(C)(4)." *State v. Adams*, 2d Dist. Clark No. 2014-CA-13, 2015-Ohio-1160, ¶ 17, citing R.C. 2953.08(G)(2)(b) and *Bonnell* at ¶ 29. "Second, the defendant can argue that the record does not support the findings made under R.C. 2929.14(C)(4)." *Id.*, citing R.C.

2953.08(G)(2)(a) and *State v. Moore*, 2014-Ohio-5135, 24 N.E.3d 1197 (8th Dist.).

{¶ 24} In this case, there is no question that the trial court made the required statutory findings. The trial court made the appropriate statements as well as additional findings under R.C. 2929.14(C)(4)(a) and R.C. 2929.14(C)(4)(c) that Muldrew was under post-release control at the time he committed the instant offenses and that Muldrew's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public.

{¶ 25} Regarding the second potential basis for error, i.e., that the sentence is clearly and convincingly unsupported by the record, we note that trial courts are guided by the R.C. 2929.11 sentencing principles. They are also required to consider the sentencing factors in R.C. 2929.12, but "need not articulate their considerations explicitly on the record." *State v. Mabra*, 2d Dist. Clark No. 2014-CA-147, 2015-Ohio-5493, ¶ 56.

{¶ 26} R.C. 2929.12(B) contains a list of nine factors indicating that an "offender's conduct is more serious than conduct normally constituting the offense * * *." The trial court noted that the victim suffered serious physical and psychological harm as listed in R.C. 2929.12(B)(2). Further, R.C. 2929.12(B) permits trial courts to consider any other relevant factors that would make an offender's conduct more serious than conduct normally constituting the offense. Muldrew held a knife to the victim's throat, he broke her nose, and he left bruises where he bit her. The trial court found that none of the factors that would make an offender's conduct less serious were present.

{¶ 27} R.C. 2929.12(D) sets forth factors indicating that an offender is likely to commit future crimes. The trial court noted that Muldrew had both a juvenile record as well as an adult criminal history. R.C. 2929.12(D)(2). The trial court also noted that

Muldrew was on post-release control at the time he committed the offenses. R.C. 2929.12(D)(1). The court also found that Muldrew had not been rehabilitated and that he did not respond favorably to prior sanctions. R.C. 2929.12(D)(3). Finally, the trial court found that Muldrew exhibited no genuine remorse. R.C. 2929.12(D)(5).

{¶ 28} We have no basis to conclude that the consecutive sentences the trial court imposed are clearly and convincingly unsupported by the record.

{¶ 29} We conclude that the trial court did not err by failing to merge Muldrew's convictions for purposes of sentencing and that it did not err by imposing consecutive sentences. Accordingly, the first assignment of error is overruled.

### III. Competency/Sanity

{¶ 30} For his second assignment of error, Muldrew asserts the following:

THE TRIAL COURT FAILED TO GIVE CREDENCE TO QUESTIONS OF COMPETENCY.

{¶ 31} Muldrew contends that the trial court's "overt dismissal of potential mental illness and resulting competency concerns" was error. In support, he argues that there was "circumstantial evidence from the facts of this case that the psychological professionals missed something significant." Muldrew then cites to the fact that he did not attempt to hide the evidence of the offenses and that he was raised under "dire conditions" and "lived [a] tragic existence."

{¶ 32} As noted by the State, it is not clear from a reading of Muldrew's argument whether he is asserting a claim that the trial court erred by finding him competent to stand trial, or whether he is merely arguing that the trial court should have considered his mental

health as a mitigating factor at sentencing.

{¶ 33} We begin by noting that Muldrew waived these arguments because Muldrew's "guilty plea constituted an implied admission of sanity, and the trial court's acceptance of the plea was an affirmation of its belief in [his] sanity." *State v. Pepper*, 2d Dist. Miami No. 2013-CA-6, 2014-Ohio-3841, ¶ 6, citing *State v. Fore*, 18 Ohio App.2d 264, 248 N.E.2d 633 (4th Dist.1969). As such, "issues of competency as they relate to a defense to criminal charges are waived by a plea of guilty." *Id.*, quoting *State v. Denton*, 2d Dist. Montgomery No. 11376, 1989 WL 159195 (Dec. 29, 1989). "Pleas of guilty or nolo contendere waive all issues of fact and allow the court to go forward on the basis of the record, resting on the presumption of competence created by the law." *Id.*

{¶ 34} Even were the issue not waived, we would conclude that Muldrew's claim lacks merit. This court has recently addressed the issues of insanity and competency to stand trial in *State v. Ferguson*, 2018-Ohio-987, 108 N.E.3d 1161 (2d Dist.), wherein we stated:

> A defendant is incompetent to stand trial if he or she "is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense * * *." R.C. 2945.37(G). Criminal defendants are rebuttably presumed to be competent to stand trial. *Id.*

> The test for determining whether a defendant is competent to stand trial is whether he or she has sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding and whether the defendant has a rational and factual understanding of the proceedings

against him or her. *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 32, citing *State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995) and *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). In determining if incompetence was established, courts should consider the following: "(1) doubts expressed by counsel as to the defendant's competence; (2) evidence of irrational behavior; (3) the defendant's demeanor at trial; and (4) prior medical opinion relating to competence to stand trial." *State v. Rubenstein*, 40 Ohio App.3d 57, 60-61, 531 N.E.2d 732 (8th Dist. 1987).

It is well established that a defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and assisting his counsel; incompetency must not be equated with mere mental illness or emotional instability. *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986); *State v. Fahl*, 2d Dist. Clark No. 2005-CA-98, 2006-Ohio-1809, ¶ 8. *Accord State v. Smith*, 89 Ohio St.3d 323, 329, 731 N.E.2d 645 (2000).

Because a defendant is presumed to be competent to stand trial, the burden is on the defendant to prove by a preponderance of the evidence that he is not competent. *State v. Jordan*, 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, ¶ 28; R.C. 2945.37(G). A trial court's finding that a defendant is competent to stand trial will not be disturbed on appeal when there is some reliable and credible evidence supporting that finding. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 46.

* * *

A person is not guilty by reason of insanity only if he or she proves that, at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts. R.C. 2901.01(A)(14). A criminal defendant's sanity is not an element of an offense that the prosecution must prove. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 35. Rather, a plea of not guilty by reason of insanity is an affirmative defense, which must be pled and proved by a preponderance of the evidence. R.C. 2901.05(A); *State v. Brown*, 5 Ohio St.3d 133, 134, 449 N.E.2d 449 (1983).

*Ferguson* at ¶ 17-21.

{¶ 35} As noted above, Muldrew underwent two separate psychological examinations. During the first evaluation with Dr. Marchis, Muldrew declined to participate in psychological testing. He also, according to Marchis, exhibited "bizarre" behavior "in a clear attempt to appear much more disturbed than what may be the case." Court's Exh. I, p. 5. However, based upon the interview with Muldrew, Dr. Marchis concluded that "Mr. Muldrew is not an intellectually-disabled individual. He does not elicit evidence of a serious mental illness and he is familiar with legal proceedings and with the consequences he could face if convicted of the charges. * * * Mr. Muldrew's clinical presentation was unequivocally consistent with malingering. His malingering attempts were assessed as rather obvious and unsophisticated." Tr. p. 50-51. Marchis opined that Muldrew was competent to stand trial.

{¶ 36} Following the second evaluation, Dr. Davis opined that Muldrew exhibited

"non-credible symptoms of mental illness" which was corroborated by the psychological testing results that were "characteristic of persons who are feigning a mental disorder and is rarely seen in clients responding truthfully." Court's Exh. III, p.5. Davis also noted that Muldrew informed the victim that he had committed a rape offense and been in prison prior to the instant offenses, that he used Vaseline during the rape offenses, and that he ejaculated on the victim's leg and then wiped the semen away. Finally, David noted that when Muldrew forced the victim to drive him to an ATM, he threatened to shoot her if she tried to get away. According to Davis, all of these behaviors indicated that Muldrew was aware of the wrongfulness of his actions at the time of the offenses. Davis also concluded that Muldrew exhibited signs of malingering, that he was capable of standing trial, and that he did not suffer from a mental defect at the time of offenses.

{¶ 37} We conclude that the record contains competent, credible evidence that Muldrew was competent to stand trial. We also note that during the plea hearing, when the trial court read the kidnapping charges to Muldrew, the court included the language "or in the case of a victim under the age of 13." Tr. p. 11. At that point, Muldrew interjected to ask why such language was in the charge as the victim was not a minor. The trial court indicated that the language was surplusage and did not apply to the case. This exchange corroborates the finding that Muldrew was able to participate in his own defense. We further conclude that there was competent, credible evidence that Muldrew was not suffering from a mental defect or illness at the time he committed the offenses.

{¶ 38} We next address the claim that the trial court did not take note of Muldrew's alleged mental health issues during sentencing. Muldrew claims that the trial court "itself alluded to its concerns about [his] mental state when it reviewed [his] history and stated,

"[b]ut he does suffer from that mental health history."[3]   Tr. p. 40.

{¶ 39} We reject this claim.   First, it is evident from the record that the trial court did consider Muldrew's psychological evaluations and his personal history during sentencing.   Further, as stated above, the evidence did not support a finding that Muldrew suffered from any significant mental health issues that would have any effect upon sentencing.

{¶ 40} We conclude that the trial court properly considered the relevant mental health evidence and that it did not err by finding Muldrew competent to stand trial.   The trial court also did not improperly fail to consider Muldrew's mental health during sentencing.   Accordingly, the second assignment of error is overruled.

## IV. Conclusion

{¶ 41} Both of Muldrew's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.


Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Mark J. Bamberger
Hon. Dennis J. Langer

---

[3] We note that this cited statement was not made by the trial court as alleged by Muldrew, but rather was a statement made by his own counsel.   Counsel also stated that Muldrew was on "psychotic medication" while in jail.   However, the psychological reports indicate that Muldrew sought the medication because he thought it would help his case.