**[Cite as *In re X.F.*, 2025-Ohio-2730.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

IN RE:

    X.F.,

ADJUDICATED DELINQUENT
CHILD.

CASE NO. 5-25-01

OPINION AND
JUDGMENT ENTRY

**Appeal from Hancock County Common Pleas Court
Juvenile Division
Trial Court No. 2024 JD 0073**

**Judgment Affirmed**

**Date of Decision:  August 4, 2025**

**APPEARANCES:**

    *Charlyn Bohland* **for Appellant**

    *Justin Kahle* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Adjudicated delinquent child-appellant, X.F., appeals the December 2, 2024 judgment entry of disposition of the Hancock County Court of Common Pleas, Juvenile Division. For the reasons that follow, we affirm.

{¶2} This case began on the evening of October 13, 2023 with a Snapchat conversation between two 15-year-olds, X.F. and the victim. While at home after being grounded by her mother, the victim was invited by X.F. to come to his house. X.F. told her other people would be there and asked if she wanted to come over and smoke marijuana, an invitation she accepted. The victim then provided her address, and X.F. sent a cab to transport her to his residence. After arriving at his residence, X.F. raped the victim on three separate occasions over the course of the night, each time after his brother left the room and X.F. locked the door.

{¶3} On April 30, 2024, a complaint was filed against X.F. charging him with Count One of kidnapping in violation of R.C. 2905.01(A)(4), a felony of the first degree if committed by an adult, and Counts Two, Three, and Four of rape in violation of R.C. 2907.02(A)(2), felonies of the first degree if committed by an adult. On May 7, 2024, X.F. filed a written denial to the charges in the complaint.

{¶4} The case proceeded to an adjudicatory hearing on September 9-10, 2024. On September 16, 2024, the trial court found X.F. to be a delinquent child as alleged in the complaint.

{¶5} At the dispositional hearing on December 2, 2024, the trial court ordered X.F. to serve 71 days in detention (with 71 days credit for time served) as to Count One. Further, the trial court committed X.F. to the legal care and custody of the Ohio Department of Youth Services ("DYS") for a minimum of two years (not to exceed X.F.'s 21st birthday) as to Counts Two, Three, and Four, respectively. X.F. was ordered to serve the commitment periods consecutively for an aggregate commitment of a minimum of six years (not to exceed X.F.'s 21st birthday).

{¶6} X.F. filed his notice of appeal on December 30, 2024. He raises four assignments of error for our review. For ease of our discussion, we will begin by addressing X.F.'s first and second assignments of error together, followed by his third and fourth assignments of error.

### First Assignment of Error

**The juvenile court violated X.F.'s right to due process of law when it adjudicated him delinquent of kidnapping in the absence of sufficient evidence, in violation of the U.S. Const., amends. V, XIV; Ohio Const., art. I § 16; and Juv.R. 29(E)(4). (A-1; 12.2.2024 Judgment Entry, p.1; 9.10.24 T.pp.273-275, 281).**

### Second Assignment of Error

**The juvenile court violated X.F.'s right to due process when it adjudicated him delinquent of kidnapping and rape, when that decision was against the manifest weight of the evidence, in violation of the U.S. Const., amends. V, XIV; Ohio Const., art. I § 16; and Juv.R. 29(E)(4). (A-1; 12.2.2024 Judgment Entry, p.1; 9.10.24 T.pp.273-275, 281).**

{¶7} In his first and second assignments of error, X.F. argues that his kidnaping adjudication is based on insufficient evidence and that his kidnapping and rape adjudications are against the manifest weight of the evidence. In support of his sufficiency-of-the-evidence challenge, X.F. argues that a rational trier of fact could not have found that he kidnapped the victim by deception. Further, X.F. argues the adjudications for kidnapping and rape are against the manifest weight of the evidence because the victim's testimony was unreliable.

*Standard of Review*

{¶8} The same legal standards for evaluating the weight and sufficiency of evidence apply in juvenile adjudications as in adult criminal cases. *In re G.F.*, 2024-Ohio-5366, ¶ 9 (3d Dist.). Thus, "[a]n appellate court's function when reviewing the sufficiency of the evidence to support a [juvenile adjudication] is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the [offense] proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve

evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.). *See also State v. Berry*, 2013-Ohio-2380, ¶ 19 (3d Dist.) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶9} On the other hand, in determining whether a juvenile adjudication is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [adjudication] must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the [adjudication],' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*Sufficiency of the Evidence*

**{¶10}** We begin by reviewing the sufficiency of the evidence supporting X.F.'s kidnapping adjudication. In the case before us, X.F. was found delinquent of kidnapping in violation of R.C. 2905.01(A)(4). That statute provides, in its relevant part that, "[n]o person, by force, threat, or deception . . . shall remove another from the place where the other person is found or restrain the liberty of the other person . . . [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will." R.C. 2905.01(A)(4).

**{¶11}** On appeal, X.F. argues only that there is insufficient evidence that he kidnapped the victim by *deception*. Because it is the only element that X.F. challenges on appeal, we will address only whether the evidence, when viewed in a light most favorable to the prosecution, is such that a rational trier of fact could have found that X.F. used deception to get the victim to his house.

**{¶12}** Although Ohio's kidnapping statute does not define the term "deception," the Ohio Jury Instructions borrow a definition for it from another statute, R.C. 2913.01(A). *State v. Towne*, 1989 WL 154784, *2 (9th Dist. Dec. 20, 1989). Under this definition, "deception"

> means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact.

 R.C. 2913.01(A).

{¶13} Viewing the evidence in a light most favorable to the prosecution, we conclude that X.F.'s kidnapping adjudication is supported by sufficient evidence. That is, a rational trier of fact could have found that X.F. kidnapped the victim by deception. *Compare Towne* at *3 (concluding that a jury could find kidnapping by deception where the defendant used the false pretext of driving victims home in order to control them for a robbery).

{¶14} Decisively, the victim presented testimony at the adjudication hearing that X.F. committed kidnapping by deception when he knowingly created a false impression, using the pretext that a social gathering with other people was happening at his house, to lure her to his residence for the purpose of engaging in sexual activity. *Compare State v. El-Berri*, 2008-Ohio-3539, ¶ 19 (8th Dist.) (holding that the State presented sufficient evidence to support a kidnapping conviction where the defendant used the false pretext of needing to retrieve something to lure the victim to his house, instead of taking her home as promised). Specifically, the victim testified that X.F. invited her over on the premise that "[t]here was going to be other people there" to hang out but, when she arrived, she saw no one else there and asked to go home. (Sept. 9-10, 2024 Tr., Vol. I, at 125). Even though X.F. and his brother promised to call the victim a cab, that promise was not fulfilled until the next morning, despite her multiple requests to leave

throughout the night. Moreover, according to the victim, X.F. compounded the initial deception by asserting that she "should have got there sooner, as people had just left." (*Id.* at 133).

{¶15} Thus, based on this evidence demonstrating that X.F. knowingly created the false impression of a social gathering to lure the victim to his residence, we conclude that the State presented sufficient evidence that X.F. committed kidnapping by deception. *See State v. Williams*, 2002-Ohio-6919, ¶ 29 (11th Dist.) (determining that the State presented sufficient evidence to support a kidnapping conviction where the defendant lured the victim into his truck with the false promise of taking her to a telephone). Consequently, X.F.'s kidnapping adjudication is based on sufficient evidence.

*Manifest Weight of the Evidence*

{¶16} Having concluded that X.F.'s kidnapping adjudication is based on sufficient evidence, we next address X.F.'s arguments that his kidnapping and rape adjudications are against the manifest weight of the evidence. In support of his manifest-weight-of-the-evidence argument, X.F. contends that the victim's testimony was unreliable and not credible. Specifically, X.F. contends the victim had a strong motive to be untruthful because she was grounded and was caught by her mother after sneaking out of the house. X.F. further argues that the victim's testimony was filled with inconsistencies that call her credibility into question.

Ultimately, X.F. argues that the trier of fact lost its way in deciding that what he claims was consensual sex was actually rape.

**{¶17}** As with many sexual-abuse cases, this case presents the "classic 'he-said/she-said'" scenario, "with no physical evidence to corroborate the [victim's] allegation[s]." *In re N.Z.*, 2011-Ohio-6845, ¶ 79 (11th Dist.). "Thus, credibility of the witnesses was the primary factor in determining guilt." *Id.* As we noted above, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *DeHass*, 10 Ohio St.2d 230 at, paragraph one of the syllabus. "When examining witness credibility, 'the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" *In re N.Z.* at ¶ 79, quoting *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). "A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it." *Id.* "'"A verdict is not against the manifest weight of the evidence because the [jury] chose to believe the State's witnesses rather than the defendant's version of the events."'" *State v. Missler*, 2015-Ohio-1076, ¶ 44 (3d Dist.), quoting *State v. Bean*, 2014-Ohio-908, ¶ 15 (9th Dist.), quoting *State v. Martinez*, 2013-Ohio-3189, ¶ 16 (9th Dist.).

**{¶18}** In this case, the victim testified to her version of events, and the trier of fact found her credible. *Compare State v. White*, 2017-Ohio-1488, ¶ 51 (3d Dist.)

(affirming convictions for rape and gross sexual imposition after the jury found the testimony of the four victims regarding the sexual abuse to be credible); *In re N.Z.* at ¶ 81 (affirming a rape adjudication that was based solely on the trial court's finding that the victim's testimony was credible). Critically, in a case resting on competing narratives, the trier of fact does not lose its way when the victim's testimony is substantiated by direct and circumstantial corroborating evidence. *Compare State v. Rawlins*, 2024-Ohio-1733, ¶ 36 (3d Dist.) (upholding a rape conviction where the jury was responsible for weighing the victim's testimony, the defendant's version of events, and the corroborating physical and DNA evidence).

{¶19} In particular, the victim's testimony that X.F. kidnapped her by deception was directly corroborated by X.F.'s brother's testimony, who confirmed that X.F. lied about a social gathering to lure her to their residence. Furthermore, the victim's account of being raped by force was supported by physical evidence from the forensic nurse's exam, which documented bruising on her neck consistent with fingers and a physical tear in her perianal area. This objective medical evidence, combined with the presence of X.F.'s DNA on the victim's neck and underwear, provided a sufficient basis for the trial court to find the victim credible. Thus, while the defense highlighted inconsistencies in the victim's testimony, the trier of fact, as the sole judge of credibility, was entitled to believe the victim's

testimony—namely, where it was reinforced by other evidence in this case—and determine that X.F. committed kidnapping and rape. *See Rawlins* at ¶ 36.

{¶20} Accordingly, we conclude that the trier of fact did not clearly lose its way and create a manifest miscarriage of justice that X.F.'s kidnapping and rape adjudications must be reversed and a new trial ordered. Thus, X.F.'s kidnapping and rape adjudications are not against the manifest weight of the evidence.

{¶21} X.F.'s first and second assignments of error are overruled.

### Third Assignment of Error

**The juvenile court erred when it failed to merge X.F.'s adjudications, in violation of the U.S. Const., amends. V, XIV; Ohio Const., art. I § 16; and State v. Ruff, 2015-Ohio-995. (A-1; 12.2.2024 Judgment Entry, p.2; 12.2.2024 T.p.35).**

{¶22} In his third assignment of error, X.F. argues that the trial court erred by failing to merge his kidnapping delinquency adjudication with his rape delinquency adjudications. Specifically, X.F. contends that his adjudications are allied offenses of similar import because the act of luring the victim to his house was not a separate offense with its own distinct harm or motivation, but was merely incidental to the single objective of committing rape.

*Standard of Review*

{¶23} Whether offenses are allied offenses of similar import is a question of law that this court reviews de novo. *State v. Stall*, 2011-Ohio-5733, ¶ 15 (3d Dist.).

"De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 2013-Ohio-647, ¶ 27 (3d Dist.).

*Analysis*

**{¶24}** "The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution prohibit a criminal defendant from being tried twice for the same offense." *State v. Pendleton*, 2020-Ohio-6833, ¶ 8. "This prohibition applies to successive prosecutions as well as to multiple punishments for the same offense." *Id.* "Regarding multiple punishments for the same offense, the Double Jeopardy Clause prohibits 'the sentencing court from prescribing greater punishment than the legislature intended.'" *Id.*, quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

**{¶25}** "[J]uveniles are entitled to the same constitutional double-jeopardy protections as adults" and "juvenile courts must conduct the same double-jeopardy analysis in delinquency proceedings that other courts apply in adult criminal proceedings." *In re A.G.*, 2016-Ohio-3306, ¶ 1. "This includes application of Ohio's merger statute (i.e., R.C. 2941.25), which codifies the constitutional double jeopardy protection against multiple punishments for the same offense." *In re J.D.*, 2023-Ohio-250, ¶ 76 (3d Dist.).

R.C. 2941.25, Ohio's multiple-count statute, states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the

-12-

indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶26}** The Supreme Court of Ohio directs us to apply a three-part test to determine whether a juvenile can be adjudicated delinquent for multiple offenses:

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate [adjudications]. The conduct, the animus, and the import must all be considered.

*State v. Ruff*, 2015-Ohio-995, ¶ 31. *See also State v. Gilmer*, 2024-Ohio-1178, ¶ 87 (6th Dist.) ("If the answer to any of these questions is 'yes,' the defendant may be convicted and sentenced for multiple offenses."). "The burden is on the defendant to establish his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act." *State v. Artis*, 2019-Ohio-2070, ¶ 44 (3d Dist.).

**{¶27}** "As explained in *Ruff*, offenses are of dissimilar import 'when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.'" *State v. Bailey*, 2015-

Ohio-2997, ¶ 77 (1st Dist.), quoting *Ruff* at paragraph two of the syllabus. "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial * * * will reveal whether the offenses have similar import." *Ruff* at ¶ 26. "[A] defendant's conduct that constitutes two or more offenses against a single victim can support multiple [adjudications] if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Id.*

{¶28} "The term 'animus' means ""purpose or, more properly, immediate motive.""" *State v. Ramey*, 2015-Ohio-5389, ¶ 70 (2d Dist.), quoting *State v. Grissom*, 2014-Ohio-857, ¶ 40 (2d Dist.), quoting *State v. Logan*, 60 Ohio St.2d 126, 131 (1979). "'Where an individual's immediate motive involves the commission of one offense, but in the course of committing that [offense] he must . . . commit another, then he may well possess but a single animus, and in that event may be'" adjudicated for only one offense. *Id.*, quoting *Logan* at 131.

{¶29} "'Like all mental states, animus is often difficult to prove directly, but must be inferred from the surrounding circumstances.'" *Id.* at ¶ 71, quoting *Logan* at 131. "'Thus the manner in which a defendant engages in a course of conduct may indicate distinct purposes.'" *Id.*, quoting *State v. Whipple*, 2012-Ohio-2938, ¶ 38 (1st Dist.). "'Courts should consider what facts appear in the record that "distinguish the circumstances or draw a line of distinction that enables a trier of

fact to reasonably conclude separate and distinct [offenses] were committed.'"" *Id.*, quoting *Whipple* at ¶ 38, quoting *State v. Glenn*, 2012-Ohio-1530, ¶ 9 (8th Dist.).

**{¶30}** Here, X.F. was adjudicated delinquent for kidnapping in violation of R.C. 2905.01(A)(4). Under that statute, the crime of kidnapping is committed when a person uses force, threats, or deception to either move someone from their location or restrain their liberty, for the specific purpose of engaging in non-consensual sexual activity with that person. X.F. was also adjudicated delinquent for rape in violation of R.C. 2907.02(A)(2), which provides, in its relevant part that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2).

**{¶31}** Based on our review of the record, we conclude that the trial court did not err by failing to merge X.F.'s kidnapping and rape adjudications. Decisively, the harm resulting from the kidnapping in this case was separate and identifiable from the harm caused by the rape offenses. That is, the harm from the kidnapping offense in this case (luring the victim from the safety of her home under false pretenses, caused a distinct psychological harm and a violation of her liberty the moment she was removed by deception) was separate and identifiable from the subsequent physical and sexual trauma inflicted during the three distinct acts of rape. Consequently, because the harm from the deceptive luring and removal (even though the kidnapping offense was sexually motivated) is different from the harm

of the subsequent sexual assaults, the offenses are of dissimilar import and do not merge. Thus, the trial court did not err by failing to merge X.F.'s kidnapping and rape adjudications. *See State v. Muldrew*, 2018-Ohio-4883, ¶ 19 (2d Dist.).

{¶32} X.F.'s third assignment of error is overruled.

### Fourth Assignment of Error

**The juvenile court erred abused its discretion when it committed X.F. to DYS for six years, in violation of R.C. 2512.01. (A-1; 12.2.2024 Judgment Entry, pp.2-3; 12.2.2024 T.p.36).**

{¶33} In his fourth assignment of error, X.F. argues the trial court abused its discretion by committing him to the legal care and custody of DYS for a minimum of six years and a maximum period not to exceed X.F.'s attainment of 21 years of age as to his rape adjudications. Specifically, X.F. contends that the trial court's order of commitment is unsupported by the record and failed to satisfy the requirements of R.C. 2152.01.

### *Standard of Review*

{¶34} "We review a juvenile court's disposition for a child adjudicated delinquent under an abuse-of-discretion standard." *In re J.C.*, 2022-Ohio-2993, ¶ 7 (3d Dist.). An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

*Analysis*

**{¶35}** "Ohio's juvenile courts—deriving power solely by statute—are courts of limited jurisdiction." *In re J.C.* at ¶ 8. "To that end, R.C. Chapter 2152 governs juvenile-delinquency matters." *Id.*, citing *In re Cross*, 2002-Ohio-4183, ¶ 11.

**{¶36}** "When reviewing a case that originated in the juvenile court, we must consider the purposes underlying juvenile dispositions as set forth under R.C. 2152.01." *Id.* at ¶ 9. "Those purposes include providing 'for the care, protection, and mental and physical development of the juvenile offender'; protecting 'the public interest and safety'; holding 'the juvenile offender accountable'; restoring 'the victim'; and rehabilitating 'the juvenile offender.'" *Id.*, quoting *In re H.V.*, 2014-Ohio-812, ¶ 9. "The statute further states that these purposes are to be achieved 'by a system of graduated sanctions and services.'" *In re H.V.* at ¶ 9, quoting R.C. 2152.01(A).

**{¶37}** "The various traditional juvenile dispositions available to a trial court are delineated in R.C. 2152.16, 2152.17, 2152.19, and 2152.20." *Id.* at ¶ 32 (O'Connor, C.J., dissenting). "In particular, when determining an appropriate disposition for a juvenile who has been adjudicated delinquent, the juvenile court may commit the juvenile to the legal care and custody of DYS; place the juvenile in a detention facility or on house arrest; impose fines; or impose any of the other options (or combination of options) described in R.C. Chapter 2152." *In re J.C.* at

¶ 10, quoting *In re H.V.* at ¶ 33 (O'Connor, C.J., dissenting). "Dispositions imposed under the delinquency statutes are to be 'reasonably calculated to achieve the overriding purposes' of R.C. 2152.01 but must also be 'commensurate with and not demeaning to the seriousness of the . . . conduct and its impact on the victim, and consistent with dispositions for similar acts committed by similar delinquent children.'" *State v. Morgan*, 2017-Ohio-7565, ¶ 47, quoting R.C. 2152.01(B).

{¶38} Importantly, "'[t]he juvenile disposition statutes do not exist merely to punish children and prevent future crime . . . .'" *In re T.H.*, 2007-Ohio-352, ¶ 13 (12th Dist.), quoting *In re Chappell*, 2005-Ohio-6451, ¶ 49 (7th Dist.). "Nevertheless, despite the stated purposes of providing for the care, protection, and development of children, and to rehabilitate the offender, some circumstances justify substantial confinement in order to fulfill the purposes of protecting public safety and holding the offender accountable." *Id.*, citing *In re J.B.*, 2005-Ohio-7029, ¶ 120 (12th Dist.).

{¶39} As a first-degree felony if committed by an adult, rape carries the possibility of commitment to the legal care and custody of DYS "for an indefinite term consisting of a minimum period of one to three years . . . and a maximum period not to exceed the child's attainment of twenty-one years of age." R.C. 2152.16(A)(1)(c). In this case, the trial court committed X.F. to the legal care and custody of DYS for a minimum period of two years not to exceed X.F.'s attainment

of 21 years of age as to each of his rape adjudications. Accordingly, X.F.'s disposition falls within the statutory range. *Accord In re J.S.*, 2020-Ohio-3413, ¶ 14 (3d Dist.).

{¶40} Nevertheless, X.F. argues that the trial court abused its discretion by committing him to the legal care and custody of DYS for a minimum of two years and a maximum period not to exceed X.F.'s attainment of 21 years of age as to each of his rape adjudications, a disposition that was double the three-year total commitment recommended by both the State and the probation department. X.F. argues that the trial court's harsher sentence disregards mitigating evidence and the rehabilitative purposes of juvenile law, and imposes a punitive sentence that is not the least restrictive disposition appropriate for his case.

{¶41} However, based on our review of the record, we conclude that the trial court did not abuse its discretion by committing X.F. to the legal care and custody of DYS for an aggregate minimum sentence of six years for his three rape adjudications. Importantly, our review of the record reveals that the trial court considered the purposes of juvenile dispositions prior to committing X.F. to the legal care and custody of DYS and that the trial court's commitment of X.F. to DYS is reasonably calculated to achieve those purposes. *See In re J.C.*, 2022-Ohio-2993, at ¶ 14 (3d Dist.). Indeed, even though the State advocated for a disposition of a one-year commitment to the legal care and custody of DYS as to each of his rape

adjudications (to be served consecutively), the trial court considered that recommendation alongside "the behavior and the testimony that [it] heard" and the other aggravating factors in the record. (Dec. 2, 2024 Tr. at 36). Crucially, the record reveals that X.F. was already on probation for a prior felony adjudication at the time he committed these offenses. Further, X.F. had a history of probation violations. The trial court also noted X.F.'s profound lack of remorse, which was highlighted by the probation department and evidenced by X.F.'s own statement at sentencing that he was being "falsely accused." (*Id.* at 27). Additionally, the trial court heard a victim impact statement presented by the victim's advocate, allowing it to consider the profound effect of the offenses on the victim. Thus, it is evident from the record that the trial court reasonably concluded that the longer six-year commitment was necessary to protect the public and hold X.F. accountable, consistent with the purposes of R.C. 2152.01. *See In re J.C.* at ¶ 15-16.

{¶42} "Significantly, 'when reviewing for an abuse of discretion, an appellate court must not substitute its judgment for that of the trial court.'" *Id.* at ¶ 17, quoting *In re I.S.P.*, 2010-Ohio-410, ¶ 20 (4th Dist.). "Indeed, the trial court is 'better able to view the parties, to assess the victim's and the victim's family's needs, to assess the offender's situation and to then consider and weigh all available options.'" *Id.*, quoting *In re B.C.*, 2007-Ohio-6477, ¶ 13 (4th Dist.). *See also In re J.S.*, 2020-Ohio-3413, at ¶ 13 (3d Dist.) ("'Because the juvenile court "has the

opportunity to see and hear the delinquent child, to assess the consequences of the child's delinquent behavior, and to evaluate all the circumstances involved," [R.C. 2152.01] authorizes it to issue orders of disposition appropriate to each child.'"), quoting *In re B.K.*, 2018-Ohio-864, ¶ 10 (2d Dist.), quoting *In re Caldwell*, 76 Ohio St.3d 156, 160-161 (1996).

{¶43} Here, X.F. has not presented this court with any reasonable argument other than a difference in opinion to reverse his order of commitment. Consequently, because the trial court's disposition is well within its broad discretion, there is nothing in this record to suggest that the trial court acted unreasonably, arbitrarily, or unconscionably. Therefore, we conclude that the trial court did not abuse its discretion by committing X.F. to the legal care and custody of DYS for a minimum period of two years and a maximum period not to exceed X.F.'s attainment of 21 years of age as to each of his rape adjudications.

{¶44} X.F.'s fourth assignment of error is overruled.

{¶45} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the juvenile court.

***Judgment Affirmed***

**WALDICK, P.J. and WILLAMOWSKI, J., concur.**

Case No. 5-25-01

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

William R. Zimmerman, Judge

Juergen A. Waldick, Judge

John R. Willamowski, Judge

DATED:
/hls

-22-